Case No. 22-5150 / 22-5151

# UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

SISTERS FOR LIFE, INC., et al.,

*Plaintiffs-Appellants*

v.

LOUISVILLE-JEFFERSON COUNTY, KY METRO GOVERNMENT, et al.,

*Defendants-Appellees*

_____

On Appeal from the United States District
Court for the Western District of Kentucky
Case No. 3:21-cv-00367
_____

## RESPONSE BRIEF OF DEFENDANTS-APPELLEES
_____

Natalie Johnson and John F. Carroll
Jefferson County Assistant Attorneys
Office of Mike O'Connell, Jefferson County Attorney
200 S. Fifth Street, Suite 300N
Louisville, Kentucky 40202
Tel: (502) 574-4307
Natalie.johnson@louisvilleky.gov
John.carroll2@louisvilleky.gov


*Attorneys for Defendants/Appellees Louisville-Jefferson County, Ky Metro Government, Mayor
Greg Fischer, Chief Erika Shields and Jefferson County Attorney Mike O'Connell*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to 6th Cir. R. 26.1, Defendants/Appellees Louisville-Jefferson County, KY Metro Government, Mayor Greg Fischer, Chief Erika Shields and Jefferson County Attorney Mike O'Connell ("Defendants/Appellees") are not subsidiaries or affiliated of a publicly owned corporation. There is no publicly owned corporation, not a party to this appeal, that has a financial interest in the outcome of this appeal.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT……………………………...…… i

TABLE OF CONTENTS…………………………………………………..…… ii

TABLE OF AUTHORITIES……………………………………………..…...iv

STATEMENT OF THE CASE……………………………………………… 1

    1.    History……………………………………………………….. 1

    2.    The Ordinance ……………………………………………………5

SUMMARY OF ARGUMENT………………………………………...……11

STANDARD OF REVIEW……………...………………………………..12

ARGUMENT……………..………………………………………………..14

    1.    APPELLANTS CANNOT DEMONSTRATE A LIKELIHOOD OF SUCCESS ON THE MERITS………………………………...……14

        A.    The Ordinance does not Violate First Amendment Free Speech nor Freedom of Assembly Guarantees…...………………….. 14

            i.    The Ordinance is Content Neutral………………….... 14

            ii.    The Ordinance is Narrowly Tailored and the Least Restrictive Means to Achieve the Government's Interest Pursuant to *McCullen v. Coakley & Hill v. Colorado*....16

            iii.    The Ordinance does not Violate the Free Exercise Clause or KRS 446.350…………………………………… 22

            iv.    The Ordinance is not Unconstitutionally Vague……... 24

        B.    *Hill v. Colorado* has Precedential Value…………………… 27

2.    PLAINTIFFS CANNOT DEMONSTRATE IRREPARABLE
INJURY ……………………………………………………  29

3.    REMAINING ELEMENTS FOR INJUNCTIVE RELIEF CANNOT
BE SATISFIED……………………………….……………  30

CONCLUSION………………………………………………………...  31

CERTIFICATE OF COMPLIANCE………………………………………...41

CERTIFICATE OF SERVICE………………………………………………33

DESIGNATION OF COURT DOCUMENTS…………………………………34

ADDENDUM………………………………………………………  35

# TABLE OF AUTHORITIES

**Cases**

*American Civil Liberties Union Fund of Michigan v. Livingston County*,
796 F.3d 636 (6th Cir. 2015)……………………………………………………12, 13

*American Civil Liberties Union of Michigan v. National Security Agency/Central
Security Service*, 467 F.3d 590 (6th Cir. 2002)……………………………………30

*Ass'n. of Cleveland Fire Fighters v. City of Cleveland,* 502 F.3d 545
(6th Cir. 2007)………………………………………………………………………..24

*Bays v. City of Fairborn*, 668 F.3d 814 (6th Cir. 2012)…………………………..12

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.,*
511 F.3d 535 (6th Cir. 2007)……………………………………………………　12,13

*City of Benton Harbor v. Richardson*, 429 F.Supp. 1096  (W.D. Mi. 1977)……..30

*Clark v. Community for Creative Non–Violence,* 468 U.S. 288 (1984)…………..14

*Connally v. Gen. Constr. Co.,* 269 U.S. 385 (1925)………………………………24

*Employment Div. Dep't of Human Resources of Oregon. v. Smith*, 494 U.S. 872
(1990)……………………………………………………………………………..　22,23

*Eurozone v. City of Jacksonville*, 422 U.S. 205 (1975)…………………………...26

*Gale v. O'Donohue*, 751 F. App'x 876, (6th Cir. 2018)……………………..……..12

*Hamilton v. Schriro,* 74 F.3d 1545 (8th Cir.1996)………………………………..19

*Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644 (6th Cir. 2007)…………….13

*Hill v. Colorado*, 530 U.S. 703 (2000)………………………………………*passim*

*Kreimer v. Bureau of Police for Town of Morristown*, 958 F.2d 1242 (3d Cir.
1992)………………………………………………………………………………26

*Legatus v. Sebelius*, 901 F. Supp. 2d 980 (E.D. Mich. 2012)……………………..19

*Liberty Coins, LLC v. Goodman*, 748 F.3d 682 (6th Cir. 2014)………………..13

*Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610 (6th Cir. 2020)………..23

*McCullen v. Coakley*, 573 U.S. 464 (2014)…………………………………..*passim*

*McNeilly v. Land*, 684 F.3d 611 (6th Cir. 2012)…………………………………13

*Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789 (1984)…………………………………………………………………………26

*New Doe Child #1 v. Congress of the United States*, 891 F.3d 578 (6th Cir. 2018)…………………………………………………………………….23

*Obama for America v. Husted*, 697 F.3d 423 (6th Cir. 2012)……………………..21

*Ohralik v. Ohio State Bar Assn.*, 436 U.S. 447 (1978)……………………………26

*Parker v. Levy*, 417 U.S. 733 (1974)…………………………………………...26

*Platt v. Bd. of Comm'rs on Grievance & Discipline of Ohio Supreme* Court, 769 F.3d 447 (6th Cir. 2014)…………………………………………………………..13

*Price v. City of Chicago*, 915 F.3d 1107 (7th Cir. 2019), <u>cert. denied sub nom.</u> *Price v. City of Chicago, Illinois,* 141 S. Ct. 185, 207 L. Ed. 2d 1116 (2020)……………………………………..22

*Renton v. Playtime Theatres, Inc.,* 475 U.S. 41 (1986)…………………………...15

*Turco v. City of Englewood, New Jersey*, 935 F.3d 155 (3d Cir. 2019)…………..14

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989)…………………14, 16, 20, 27

*Wilson v. Williams*, 961 F.3d 829, (6th Cir. 2020)………………………………..12

*U.S. v. Albertini*, 472 U.S. 675 (1985)……………………………………………20

*United States v. Harriss*, 347 U.S. 612 (1954)………………………..25, 27

*United States v. Lee*, 455 U.S. 252 (1982)……………………………………..23

*United States v. Petrillo*, 67 S.Ct. 1538 (1877)………………………………...24

*United States v. Wilgus,* 638 F.3d 1274 (10th Cir.2011)…………………………19

*United States v. Zobel*, 696 F.3d 558 (6th Cir. 2012)……………………………..24

**Secondary Sources**

Jules B. Gerard & Scott D. Bergthold, Local Regulation of Adult Businesses: §2:17 Time, place and manner regulations-constitutional standards-other standards-least restrictive alternative, (November 2021)…………………………19

**Statutes and Ordinances**

Ky. Rev. Stat. § 446.350……………………………………………..22-24, 29

Louisville Ordinance O-179-21………………………………………………*passim*

## STATEMENT OF THE CASE

### 1. History

Louisville/Jefferson County has had a long history of anti-abortion protests and sidewalk counseling. The protests outside of the EMW Women's Surgical Center ("EMW Center") are distinct because the EMW Center is one of the only clinics in Kentucky that provides abortion services.[1] Because it is one of the only providers, the clinic consistently has presence from out of town protestors as well as local protestors. The protestors, and some self-proclaimed sidewalk counselors, regularly harass, stalk, intimidate and assault patients entering and exiting the clinic. Monthly reports from the EMW Center indicate that just between January 2021 and March 2021, there have been a total of at least 1,447 reported protestors outside of the EMW Center with about 23 protestors on any given day. [Exhibit A, 2021 NAF Monthly Reports, RE 38, Page ID # 1595-1597.]

These reports indicate a pattern of obstruction, trespassing, assault and stalking and demonstrate the frequency in which the Louisville Metro Police Department ("LMPD") is contacted. *Id.* Video evidence from March 6, 2021 shows a protestor grabbing a patient and dragging them away from the healthcare facility entrance. [Exhibit B, Video Evidence, RE 38, Page ID #1598. Video evidence also

---

[1] Planned Parenthood in Louisville recently became Kentucky's second clinic authorized to provide abortion services.

shows patients being stalked, harassed, touched and intimidated by protestors and some sidewalk counselors. *Id*. These are not one-off occurrences. These are occurrences that happen on a regular basis outside of the clinic.

Additionally, a study of nine (9) reproductive health clinics in Ohio, Kentucky and West Virginia conducted by the Ohio Policy Evaluation Network (OPEN) found that more than 50% of patients from the EMW Center reported protestors as a challenge to receiving healthcare. This is three times the average for the other eight clinics combined. [Exhibit C, OPEN study, RE 38, Page ID # 1599-1602]. Testimony from certified anesthesiologist Margorie Fitzgerald on April 28, 2021, discussed the effects of these protestors on patients' vital signs revealing that EMW patients routinely have "abnormal vital signs" and their blood pressure and heart rates are "that seen in a patient having a panic attack" which would "add risk to a medical procedure." [Exhibit D, Margorie Fitzgerald testimony, RE 38, Page ID # 1603].

Before enforcement of the Ordinance, there were numerous citations, reports and arrests that occurred outside of the EMW Clinic ranging from destroying property to harassment/intimidation and criminal trespassing. In fact, a self-proclaimed sidewalk counselor is currently facing prosecution for criminal trespassing because the counselor physically entered the EMW Clinic and refused to leave. Moreover, there would be many more arrests and prosecutions, but

victims/patients do not want to file complaints due to various reasons including retaliation.

Due to the level of activity outside of the EMW Clinic, before the subject Ordinance was enacted there was a need for constant police presence. However, Metro Government has limited resources it can devote to monitoring the clinic which also leads to less arrests/prosecutions. Additionally, memorandum from LMPD indicates that when incidents outside of the EMW Center occur, police officers are required to make judgment calls on whether enforcing existing ordinances or laws would violate the protestor's First Amendment rights. [Exhibit E, LMPD Memorandum from March 24, 2021, RE 38, Page ID # 1604-1606].

The Ordinance was passed on May 20, 2021 because Metro Council determined, after hearing and seeing all of the evidence, that a legitimate and significant government interest existed to protect patients entering and exiting healthcare facilities in Louisville, KY. Further, Metro Council determined that the current laws were not effective or practical in serving this interest and that a small, 10-foot buffer zone did not burden substantially more speech than necessary to further the government's interest.

On July 6, 2021, Sisters for Life and Angela Minter filed a Verified Complaint and Emergency Motion for Temporary Restraining Order in the Western District of Kentucky Case No. 3:21-cv-367. [Verified Complaint, RE 1, Page ID # 1-35];

[Motion for TRO, RE 2, Page ID # 36-61]. Sisters for Life and Angela Minter then filed an Amended Complaint on July 7, 2021 adding Kentucky Right to Life Association, Inc. as a Plaintiff ("Sisters for Life Plaintiffs/Appellants"). [Amended Complaint, RE 5, Page ID # 71-97]. The parties agreed by order, on July 23, 2021, that Defendants would not enforce the ordinance until briefing had been completed and the district court ruled on the motions. [Agreed Order, RE 8. Page ID # 101-102]. On September 3, 2021, the district court denied Sisters for Life's Motion for a Temporary Restraining Order and the ordinance became enforceable. [Memorandum Opinion and Order, RE 19, Page ID 1401-1424].

On November 16, 2021, Edward Harpring and May Kenney ("Harpring Plaintiffs/Appellants") filed a Verified Complaint in the Western District of Kentucky Case No. 3:21-cv-691, followed by a Motion for Preliminary Injunction on November 18, 2021 in a separate case. [Verified Complaint, 3:21-cv-691, RE 1, Page ID # 1-18]; [Motion for PI, RE 5, Page ID # 40-72]. Sisters for Life Plaintiffs filed a Second Amended Complaint on December 8, 2021 in Case No. 3:21-cv-367. [Second Amended Complaint, RE 28. Page ID # 1473-1497]. The two cases were consolidated by the district court, pursuant to motion, on January 6, 2022. [Order of Consolidation, RE 36, Page ID # 1538-1539]. Sisters for Life Plaintiffs renewed their Motion for Temporary Restraining Order and Preliminary Injunction on February 4, 2022. [Renewed Motion, RE 49, Page ID # 2189-2218].

On February 25, 2022, the district court denied Plaintiffs' various motions for preliminary injunctions finding that the ordinance was narrowly tailored under the intermediate scrutiny standard and finding that Plaintiffs did suffer irreparable injury. [Memorandum Opinion & Order, RE 55, Page ID # 2268-2296]. On February 28, 2022, both sets of Plaintiffs filed Notice of Appeals to this Court. [Notice of Appeal, RE 56, Page ID # 2297-2298]; [Notice of Appeal, RE 57, Page ID # 2299-2300].

## 2. The Ordinance

Louisville/Jefferson County Metro Council ("Metro Council") passed Ordinance O-179-21 on May 20, 2021. [Exhibit F, O-179-21, RE 38, Page ID #1607-1608]. The Ordinance states in relevant part that:

> "No person shall knowingly enter, remain on, or create any obstruction within the driveway of a healthcare facility or within a 'buffer zone' on the public way or sidewalk extending from the entrance of a healthcare facility to the closest adjacent sidewalk curb and 10 feet from side to side, during the facility's posted business hours, except:
>
> (a)    persons entering or leaving such facility;
>
> (b)    persons using the public sidewalk or street right-of-way adjacent to such facility solely for the purpose of reaching a destination other than such facility; or
>
> (c)    law enforcement, ambulance, firefighting, construction, utilities, public works and other municipal agents acting within the scope of their employment; or
>
> (d)    employees or agents of such facility acting within the scope of their employment."

Entrance is defined as

> [A]ny door to a healthcare facility that directly abuts the public sidewalk; provided, however, that if the door does not directly abut the public sidewalk the 'entrance' shall be the point at which the public sidewalk intersects with a pathway leading to the door."

Further, the Ordinance, in summary, states:

1. Section (B)(2) of the Ordinance prohibits a person from knowingly entering, remaining on or creating any obstruction within a buffer zone. However, a buffer zone is created via Section (C) which states "[t]he Department of Public Works shall, **at the request** of a healthcare facility, paint or lay on the public way or sidewalk two easily-distinguishable demarcation lines…" (emphasis added).

2. Section (D) states "the Louisville Department of Public Health and Wellness shall solicit information from any health care facility **that requested the demarcation line as described in this section regarding the efficacy of the "buffer" zone** in allowing patients and staff to enter and exit the facility safely." (emphasis added).

3. Section (E) states "Any health care facility that **requests that the Louisville Department of Public Works paint or lay demarcation lines** as described in subsection (C)(1), shall monitor during its hours of operation **the "buffer" zone created by the demarcation lines**…" (emphasis added).

The buffer zone created by the Ordinance is one of the smallest buffer zones that currently exists in the United States. It only extends five feet in both directions from the entrance to a healthcare facility and runs perpendicularly ending at the sidewalk curb. Moreover, the Ordinance mandates that a healthcare facility *request* the demarcation of a buffer zone by Louisville Metro Department of Public Works ("Public Works"). *See Id.* Page ID # 1607 ("The Department of Public Works shall,

**at the request** of a healthcare facility, paint or lay on the public way or sidewalk two easily-distinguishable demarcation lines…") (emphasis added). A buffer zone is not created automatically, nor can a healthcare facility create a buffer zone themselves. It must be requested through Public Works.

As mentioned, the Louisville/Jefferson County has a long history of anti-abortion protests. Over the years, the LMPD has made numerous reports, citations and arrests outside of the EMW Clinic. However, many of the existing laws and ordinance are ineffective or impractical in resolving the issues occurring outside of the EMW clinic. One of the main issues is that the existing laws require police officers to physically witness the criminal activity occurring in order to write a citation or make an arrest, thus enforcement would require constant police presence. [Depo. Lt. C. Stewart, RE 47, Page ID # 2075]. Additionally, when criminal activity is occurring and the police arrive, people cease to violate the law, which furthers the need for constant police presence to enforce the existing laws. *Id.* Page ID # 2074.

However, constant police presence is not feasible for Metro Government because of a lack of resources and manpower. *Id.* Page ID # 2001. The Ordinance takes some of this burden from LMPD by requiring the healthcare facility to monitor their own "buffer zone" pursuant to Section E which states:

> *Monitoring and documentation.* Any healthcare facility that requests the Louisville Department of Public Works paint or lay demarcation lines as described in subsection (C)(1), **shall monitor during its hours of operation the "buffer" zone created by the demarcation lines for**

**obstructions created by individuals or groups to allow patients and/or staff to enter and exit the facility safely.** (emphasis added).

[O-179-21, RE 38, Page ID # 1607].

Further, the ordinance requires LMPD, or any law enforcement officer, to issue one written warning before issuing a citation for violation of the Ordinance. *Id.* Because the Ordinance is set up this way, the healthcare facility is able to assist LMPD officers with issuing written warnings because LMPD is not required to physically witness the violation of the Ordinance in order to issue a warning and may issue the warning based on video evidence provided by the healthcare facility. LMPD is still required to physically witness violations of the Ordinance in order to issue citations, but with the help of the clinic and the warning requirements, LMPD is not required to be continuously physically present at the healthcare facility. Thus, the Ordinance provides a feasible, least restrictive way to ensure safe access to healthcare.

Additionally, the existing criminal statutes for harassment, disorderly conduct and failure to disperse are unavailing from a practical standpoint because victims/patients do not file complaints. Victims/patients rarely file complaints for various reasons, including fear of retaliation. Victims/patients many times face retaliation by protestors and sidewalk counselors once their identity becomes known such as calls to their family members and even clergy. Thus, victims are reluctant to have their information become public record by filing complaints.  Therefore, arrests

and prosecution for these crimes requires constant police presence outside of the EMW clinic which is impossible due to limited resources of LMPD and the rise of violent crimes across the city. With regards to the existing ordinances, the perpetrators leave or act on their best behavior in the presence of police, thus it is difficult for the officers to make arrests or cite people without being constantly present.

Metro Council also found that the Ordinance burdens as little speech as necessary to achieve the government's interest in safe access to healthcare. The Ordinance creates one of the smallest buffer zones in the United States, a "buffer zone" that extends five feet in both directions from the entrance to a healthcare facility and runs perpendicularly ending at the sidewalk curb. [Exhibit G, photo of "buffer zone," RE 38, Page ID # 1609]. Thus, if a patient is walking directly in the middle of the buffer zone, Plaintiffs would be, at most, five feet away from the person entering the facility. Certainly, Appellants can be seen, heard and distribute pamphlets from **at most** ten feet away, but most often within just a few feet of the patients. (Emphasis added); *See Id.*

In fact, Appellants testified that not only can they be seen and heard, but they have regular conversations with patients who are in the "buffer zone." Angela Minter testified that she can hear the escorts talking to patients even over the bullhorns "because we are right there at that line so it's a lot easier for us to hear them." [Depo.

A. Minter, RE 44, Page ID # 1843]. When asked how long it takes for a patient to walk from the drop-off shuttle outside of the clinic to the doorway of the clinic, both Appellants Edward Harpring and Mary Kenney responded that it depended on **whether or not patients stop and talk with them**. [Depo. M. Kenney, RE 46, Page ID # 1928, stating "I think that's kind of hard to say because some of the women will engage, you know, in that area. They'll stop and talk occasionally. Some, you know, will bolt right for the door. It just depends."]; [Depo. E. Harpring, RE 45, Page ID # 1898, stating "It's, I guess, a short period of time. I mean, it depends if they stop and talk."].

Regardless of whether the Court relies on decisions in *McCullen v. Coakley*, 573 U.S. 464 (2014) or *Hill v. Colorado*, 530 U.S. 703 (2000), the Ordinance is constitutional. The Ordinance creates one of the smallest buffer zones in the Unites States and **burdens very minimal speech** while protecting citizens by ensuring safe access to healthcare. The Ordinance also aids law enforcement officers with a bright-line rule to ensure patients <u>and speech</u> are protected while removing some of the burden from LMPD.

After completing the factual discovery, it is clearer now than ever that the Ordinance is the most feasible, least restrictive means to ensure that patients have safe access to healthcare and burdens very minimal speech. As seen in the photo (RE 38, Page ID # 1609), and supported by testimony, Appellants have the ability to talk

and walk with patients, and regularly do, until the last one to two feet from the entrance door. However, Appellants allege an absolute right to minister in a patient's face up to them entering a healthcare facility. This right does not exist and any burden on Plaintiff's speech is very minimal.

## SUMMARY OF ARGUMENT

The district court properly denied Plaintiffs' motions for preliminary injunction by finding that Appellants could not satisfy the rigid requirements necessary for injunctive relief. Appellants were not and still are not likely to succeed on the merits because courts have long recognized the constitutionality of buffer zones, and specifically buffer zones outside of healthcare facilities, when there is a significant and legitimate government interest and the ordinance is narrowly tailored to not overburden speech.

Additionally, the district court correctly ruled that the application of the Ordinance does not violate Appellants' free speech nor their religious rights because the Ordinance is content-neutral, narrowly tailored and unambiguous. Moreover, the district court rightfully found that the Ordinance is the least restrictive means to ensure safe, unobstructed passage into healthcare facilities and does not overburden sidewalk counselors' ability to talk with patients entering and exiting the facility.

Preliminary injunctions are extraordinary and drastic remedies and Plaintiffs have failed to satisfy and carry their burden of justifying such relief by failing to

show any irreparable harm they will suffer. Additionally, the balance of harm and public interest weighs in favor of denying the temporary restraining order and preliminary injunctive relief and the district court's ruling should be affirmed.

### III. STANDARD OF REVIEW

This Court reviews a district court's denial of a motion for a preliminary injunction for an abuse of discretion. *E.g., Wilson v. Williams*, 961 F.3d 829, 837 (6th Cir. 2020). Abuse of discretion "is a highly deferential standard" and the 'district court's determination will be disturbed only if the district court relied upon clearly erroneous findings of fact, improperly applied the governing law or used an erroneous legal standard.'" *Id*. (quoting *Gale v. O'Donohue*, 751 F. App'x 876, 881–82 (6th Cir. 2018) (quoting *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.,* 511 F.3d 535, 541 (6th Cir. 2007))).

In determining whether a preliminary injunction should be issued, a district court must balance four factors:

> "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction."

*See American Civil Liberties Union Fund of Michigan v. Livingston County*, 796 F.3d 636, 642 (6th Cir. 2015) (quoting *Bays v. City of Fairborn*, 668 F.3d 814, 818-

19 (6th Cir. 2012) (citing *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007)).

But in First Amendment cases, "'the crucial inquiry is usually whether the plaintiff has demonstrated a likelihood of success on the merits.'" *Livingston County*, 796 F.3d at 642 (citing and quoting *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644,649 (6th Cir. 2007)). This is because the public's interest and any potential harm to the parties or others "largely depend on the constitutionality of the [state action]." *Id*. (quoting *Hamilton's Bogarts Inc.*, 501 F.3d at 649); see *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689 (6th Cir. 2014), *cert. denied*, 574 U.S. 1075, 135 S. Ct. 950, 190 L.Ed.2d 831 (2015) ("[W]hen a party seeks a preliminary injunction on the basis of a potential constitutional violation, 'the likelihood of success on the merits often will be the determinative factor.'" *Livingston County*, 796 F.3d at 642 (quoting *Obama for America v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012)).

In addition, "preliminary injunctions are extraordinary and drastic remedies … never awarded as of right." *Livingston County*, 796 F.3d at 642 (quoting *Platt v. Bd. of Comm'rs on Grievance & Discipline of Ohio Supreme* Court, 769 F.3d 447, 453 (6th Cir. 2014)). The party seeking a preliminary injunction bears the burden of justifying such relief." *Id.* (quoting *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012))."

13

## ARGUMENT

1. APPELLANTS CANNOT DEMONSTRATE A LIKELIHOOD OF SUCCESS
   ON THE MERITS.

**A. The Ordinance does not Violate First Amendment Free Speech nor Freedom
   of Assembly Guarantees.**

<u>i. The Ordinance is Content Neutral.</u>

Content neutral restrictions regulate the time, place and manner of speech, but
not the content of speech. Here, the Ordinance does not attempt to regulate the
content of any individual's speech, but rather aims to regulate the time, place and
manner of the individual's speech to ensure patients can enter and exit healthcare
facilities safely. In fact, courts typically hold that buffer zone laws are content
neutral. *See e.g., Hill v. Colorado*, 530 U.S. 703 (2000); *see also McCullen v.
Coakley*, 573 U.S. 464 (2014); *see also Turco v. City of Englewood, New Jersey*,
935 F.3d 155 (3d Cir. 2019); *see also Price v. City of Chicago*, 915 F.3d 1107 (7th
Cir. 2019), <u>cert. denied sub nom.</u> *Price v. City of Chicago, Illinois,* 141 S. Ct. 185,
207 L. Ed. 2d 1116 (2020).

The United States Supreme Court has consistently held that principal inquiry
in determining content neutrality, "is whether the government has adopted a
regulation of speech because of disagreement with the message it conveys." *Ward
v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (citing *Clark v. Community for
Creative Non–Violence,* 468 U.S. 288, 295, (1984)). "The government's purpose is

the controlling consideration." *Id*. When a regulation's purpose is unrelated to content, the regulation is deemed neutral, "even if it has an incidental effect on some speakers or messages but not others." *Id*. (citing *Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 47–48, (1986)).

Although Appellants argue that the Ordinance is a "viewpoint-based speech gerrymander" because EMW authorizes its escorts to "encourage and counsel the women seeking to enter the clinic to follow through with an abortion," this is simply untrue. [Sisters for Life Motion for TRO, RE 49, Page ID # 2198].

The plain language of the Ordinance states that agents, or escorts in this situation, can only be in the buffer zone if "acting within the scope of their employment." Encouraging abortions is not within the scope of an escort's job duties. [Affidavit of Meg Stern, EMW escort, RE 53, Page ID # 2263-2264]. In fact, escorts are required to complete training and shadowing before ever being allowed to engage as an escort on their own. Their job is to assist patients with safe passage to and from the healthcare facility because of the harassment, intimidation and assaults.

Appellants have provided no proof that the escorts are engaging in pro-abortion communication or that pro-abortion communication is within the scope of their employment with the EMW Clinic. Plaintiffs also do not state in their Response or exhibits cited what these escorts are alleging saying. Further, if escorts are acting

outside of the scope of their employment within the buffer zone, that action would be in violation of the Ordinance and subject to the same penalties as anyone one else. Therefore, the district court correctly held that the Ordinance is content-neutral because it applies equally to everyone, including escorts.

   ii. The Ordinance is Narrowly Tailored and the Least Restrictive Means to Achieve the Government's Interest Pursuant to *McCullen v. Coakley* and *Hill v. Colorado*

A content-neutral time, place and manner regulation must be "'narrowly tailored to serve a significant governmental interest.'" *McCullen v. Coakley*, 573 U.S. 464, 477 (2014) (quoting *Ward*, 491 U.S. at 796). Such a regulation "'need not be the least restrictive or least intrusive means of' serving the government's interests" to be narrowly tailored. *Id*. (quoting Ward, 491 U.S. at 798). It just cannot "'burden substantially more speech than is necessary to further the government's legitimate interests.'" *Id*. (quoting *Ward*, 491 U.S. at 799).

Although Appellants heavily rely on *McCullen*, the Ordinance adopted by Metro Government is remarkably different than the 35-foot buffer zone invalidated in *McCullen v. Coakley*, 573 U.S. 464 (2014) and has an extremely different impact on sidewalk counselors, like Appellants, who seek to communicate with patients in normal, conversational tones and distribute literature.

In *McCullen*, the Massachusetts Legislature, in 2000, enacted a law which "established a defined area with an 18-foot radius around the around the entrances

and driveways" of healthcare facilities. *Id.* at 470. Once a person entered the defined area "no one (other than exempt individuals) could knowingly approach within six feet another person." *Id*. The statute was modeled on a similar Colorado law that the Supreme Court upheld in *Hill v. Colorado*, 530 U.S. 703 (2000). *Id.*

However, in 2007, the *McCullen* Court noted that Massachusetts Legislature amended the law, "replacing the six-foot no approach zones (within the 18-foot area) with a 35-foot fixed buffer zone." *Id*.  It is the 35-foot buffer before the Supreme Court in *McCullen*, not the original, smaller buffer zone similar to the one upheld in *Hill v. Colorado* and to the buffer zone created by the Ordinance. The record in *McCullen* shows that sidewalk counselors were not affected by the small buffer zone created by the 2000 law. In fact, Plaintiff *McCullen*, a self-proclaimed sidewalk counselor, stated that "since the 2007 amendment […] she reaches 'far fewer people' than she did before the amendment." *Id*. at 487. "She estimated having about 100 successful interactions over the years before the amendment." *Id.*

It is clear that it is the size of the 35-foot buffer zone that is at issue in *McCullen* because it carves out "a significant portion of the adjacent public sidewalks, pushing petitioners well back from the clinics' entrances and driveways." *Id*. Because of the size, sidewalk counselors "cannot distinguish patients from passersby," are reduced to raising their voices and have difficulties distributing literature *Id*. at 487-88.

Similar to the sidewalk counselors' testimony in *McCullen*, the Supreme Court in *Hill v. Colorado*, 530 U.S. 703 (2000) found that an 8-foot radius[2] buffer zone outside of healthcare facilities left ample room to communicate a message through speech with little interference on that speaker's ability to communicate. *Id.* at 729-730 ("Signs, pictures, and voice itself can cross an 8–foot gap with ease.") ("[D]emonstrators with leaflets might easily stand on the sidewalk at entrances (without blocking the entrance) and, without physically approaching those who are entering the clinic, peacefully hand them leaflets as they pass by").

The *Hill* Court also found that providing bright-line rules, like buffer zones, to enforcement authorities "serve the interest in evenhanded application of the law" and are "unquestionably legitimate" interests. *Id.* at 715. The *Hill* Court further held that "[a] bright-line prophylactic rule may be the best way to provide protection, and, at the same time, by offering clear guidance and avoiding subjectivity, to protect speech itself." *Id.* at 729.

Here, the buffer zone created by the Ordinance is distinguishable from the buffer zone in *McCullen* and is more akin, if not less restrictive, than the buffer zone upheld in Hill, 503 U.S. 730. Again, the buffer zone **does not need to be the least**

---

[2] The statute in *Hill* made it unlawful for any person within 100 feet of a health care facility's entrance to knowingly approach another person within eight feet of such person, unless such other person consents, for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person.

**restrictive means, it just cannot burden more speech than necessary** to further the government's interest. *McCullen*, 573 U.S. at 486 (emphasis added). This interpretation of the "least restrictive alternative" test resulted from courts realizing the inherent difficulties with the test. *See Legatus v. Sebelius*, 901 F. Supp. 2d 980, 996 (E.D. Mich. 2012) (citing *United States v. Wilgus,* 638 F.3d 1274, 1288–89 (10th Cir.2011) (listing cases). Thus, federal courts consistently find that the government should not be required "to refute every conceivable option in order to satisfy the least restrictive [test]." *Id*. (quoting *Hamilton v. Schriro,* 74 F.3d 1545, 1556 (8th Cir.1996)).

Moreover, difficulties arise when this test is applied literally to time, place and manner regulations because "the test can degenerate into nitpicking of a kind that will invalidate virtually any regulation that has an effect on speech, whether or not that effect was intended." [Jules B. Gerard & Scott D. Bergthold, Local Regulation of Adult Businesses: §2:17 Time, place and manner regulations-constitutional standards-other standards-least restrictive alternative, (November 2021), RE 53, Page ID # 2265-2266].

Because of these noted difficulties, courts do not interpret the "least restrictive alternative" test strictly or literally. The United States Supreme Court consistently has found that "an incidental burden on speech is no greater than essential, and therefore is permissible […] so long as the neutral regulation promotes a substantial

government interest that would be achieved less effectively absent the regulation." *U.S. v. Albertini*, 472 U.S. 675, 689, (1985); *see also Ward*, 491 U.S. at 797-98 ("restrictions on time, place, or manner of protected speech are not invalid 'simply because there is some imaginable alternative that might be less burdensome on speech.') (quoting *Albertini*, 472 U.S. at 689). The Supreme Court, in *Ward*, further stated, "[l]est any confusion on this point remain, we reaffirm today that a regulation of the time, place, or manner of protected speech […] need not be the least-restrictive or least-intrusive means." *Id*. at 798.

Appellants argue that Metro Government has failed to attempt other, less restrictive means of providing safe passage for patients entering and exiting healthcare facilities. Plaintiffs suggest that Metro Government should issue injunctions or use existing laws to serve the government's interest. However, as previously mentioned, to enforce existing laws is not feasible because victims/patients do not file complaints and there are limited resources for LMPD to devote to constant monitoring. Further, issuing injunctions or requiring protestors to disperse from the area **burdens more speech** than the small, 10-foot buffer zone which allows protestors and sidewalk counselors to stand close to patients. (emphasis added). *See* photo of buffer zone, RE 38, Page ID # 1609.

Here, it is clear from the deposition testimony, that the buffer is the least restrictive means feasible for Metro Government. The alternative would require

constant presence from LMPD, "which just really isn't feasible" due to the lack of manpower. [Depo. Lt. Caleb Stewart Depo, RE 47, Page ID # 2075]. Further, Lt. Stewart testified that "it is very difficult" to single out lawbreakers for enforcement actions outside of the EMW clinic because violations are typically accomplished in conjunction with multiple other people. *Id*. Page ID # 2052.

Moreover, the Ordinance places a minimal burden on Appellants' speech. Appellants, sidewalk counselors, assert that because of the nature of sidewalk counseling, the "buffer zone" prohibits them from being heard by patients entering the clinic because of "shouting and loud, speaker usage by protestors of the clinic that drown out Plaintiffs' messaging." (Sisters for Life Motion for TRO, RE 49, Page ID # 2197). Appellants further allege that the Ordinance "prohibits Plaintiffs and other sidewalk ministers from speaking, praying, or interacting with those entering the EMW clinic, including, without limitation, even with those entering who invite or otherwise solicits contact with Plaintiffs." *Id*.; *see also* [Harpring's Motion for Preliminary Injunction, RE 37, Page ID # 1548].

However, the testimony of sidewalk counselors, Appellants, Mary Kenney and Edward Harpring, are in direct opposition to this argument. When asked how long it takes for a patient to walk from the drop-off shuttle outside of the clinic to the doorway of the clinic, they both responded that it depended on **whether or not patients stop and talk with them**. (Depo. M. Kenney Depo, RE 46, Page ID # 1928,

stating "I think that's kind of hard to say because some of the women will engage, you know, in that area. They'll stop and talk occasionally. Some, you know, will bolt right for the door. It just depends."); (Depo. E. Harpring, RE 45, Page ID # 1898, stating "It's, I guess, a short period of time. I mean, it depends if they stop and talk.").

Additionally, Appellant, Ms. Minter, testified at her deposition that she can hear escorts talking to patients, **even over bullhorns**, "because we are right there at that line so it's a lot easier for us to hear them." (Depo. A. Minter, RE 44, Page ID # 1843). If escorts can be heard than surely Appellants can be heard by patients, too. *Id.* Page ID # 42; 50.

This testimony makes it clear that the Ordinance places a very minimal burden on the speech of sidewalk counselors while being the most feasible, least restrictive means to ensure safe access to healthcare. Therefore, the district court was correct in its holding that the Ordinance does not violate the Plaintiffs' First Amendment Rights of Free Speech and the Freedom to Assemble.

### iii. The Ordinance does not Violate the Free Exercise Clause or KRS 446.350.

Metro's Ordinance is a valid and neutral law of general applicability and therefore its application to Appellants must be upheld even when it is claimed that "the law proscribes (or prescribes) conduct that [Plaintiffs] religion prescribes (or proscribes)." *Employment Div. Dep't of Human Resources of Oregon. v. Smith*, 494

U.S. 872, 879 (1990) (superseded by statute) (quoting *United States v. Lee*, 455 U.S. 252, 262, n.3, (1982) (Stevens, J., concurring in judgment). Appellants Sisters for Life et al., claim the Ordinance violates their right to practice religion, but the ordinance is content-neutral and narrowly tailored, thus it does not violate Appellants' freedom of religion.

Further, KRS 446.350, Kentucky's Religious Freedom Restoration Act, is not violated. In pertinent part, the statute reads "Government shall not **substantially burden** a person's freedom of religion." Ky. Rev. Stat. §446.350. Here, as previously noted, courts, including the United States Supreme Court, have found that buffer zones, including buffer zones more restrictive than the one at issue, do not substantially burden Plaintiffs' rights. *See e.g*., *Hill*, 530 U.S. 703. Moreover, the Sixth Circuit held that "a generally applicable law that incidentally burdens religious practices usually will be upheld." *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610, 614 (6th Cir. 2020) (citing *Smith*, 494 U.S. at 878–79, 110 S.Ct. 1595; *New Doe Child #1 v. Congress of the United States*, 891 F.3d 578, 591–93 (6th Cir. 2018)).

Here, the Ordinance creates a "generally applicable law that incidentally burdens religious practices." The Ordinance is distinguishable from the issue is *Maryville* because in that case, an Executive Order was prohibiting drive-thru church services but allowed the operation of laundromats, law firms, and hardware stores,

etc., which the Court found arbitrary and thus violated the Plaintiffs rights. The Ordinance treats everyone equally and does not provide for arbitrary allowances or exemptions. Thus, the district court was correct in finding that the Ordinance did not violate any Plaintiffs' religious freedoms under the Constitution or KRS §446.350.

### iv. The Ordinance is not Unconstitutionally Vague.

Appellants Harpring and Kenney allege that the Ordinance is unconstitutionally vague and violates the Due Process Clause of the Fourteenth Amendment because the Ordinance does not 1.) define how or when a buffer zone is enforceable; nor 2.) address whether Appellants are permitted to cross through the buffer zone to get to the other side. [Harpring's Motion for Preliminary Injunction, RE 37, Page ID # 1562].

The Sixth Circuit found that "[r]egarding vagueness, it is well established that " 'a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process law.'" *United States v. Zobel*, 696 F.3d 558, 576 (6th Cir. 2012) (citing *Ass'n. of Cleveland Fire Fighters v. City of Cleveland,* 502 F.3d 545, 551 (6th Cir. 2007) (quoting *Connally v. Gen. Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1925)).

However, "if the general class of offenses to which the statute is directed is plainly within its terms, the statute will not be struck down as vague even though

marginal cases could be put where doubts might arise." *United States v. Harriss*, 347 U.S. 612, 618 (1954) (citing *United States v. Petrillo*, 67 S.Ct. 1538, 1541 (1877). "And if this general class of offenses can be made constitutionally definite by a reasonable construction of the statute, this Court is under a duty to give the statute that construction." *Id*. at 618.

Appellants Harpring and Kenney argue that the Ordinance is vague because the Ordinance fails to provide "how, or when, buffer zones are made operational, i.e., enforceable." [Harpring Motion for Preliminary Injunction, RE 37, Page ID # 1563]. However, Plaintiffs' allegations simply are not true.

> 1. Section B(1) states: **No person shall knowingly enter, remain on, or create any obstruction within the driveway of a healthcare facility or within a "buffer zone"** on the public way or sidewalk extending from the entrance of a healthcare facility to the closest adjacent sidewalk curb and 10 feet from side to side, **during the facility's posted business hours**. (emphasis added).

> 2. Section (E) states, "Any health care facility that **requests that the Louisville Department of Public Works paint or lay demarcation lines** as described in subsection (C)(1), shall monitor during its hours of operation **the "buffer" zone created by the demarcation lines**…" (emphasis added).

The plain language of the Ordinance is clear and unambiguous: a "buffer" zone is created via painted demarcation lines, which must be requested by the health care facility from the Louisville Department of Public Works. Once a "buffer" zone is created by the demarcation lines, the Ordinance is enforced during the healthcare facilities posted business hours.  Additionally, despite Appellants' unrealistic

hypotheticals, the Ordinance has only been requested at the EMW Center given the unique and long history of violence and harassment at this location. The Supreme Court is clear that laws may only be invalidated if the overbreadth is substantial and a there is a "realistic danger that the statute itself will significantly compromise recognized First Amendment protections." *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984) (citing *Eurozone v. City of Jacksonville*, 422 U.S. 205 (1975); *Ohralik v. Ohio State Bar Assn.*, 436 U.S. 447 (1978); *Parker v. Levy*, 417 U.S. 733, 760–61, (1974)); *See also Kreimer v. Bureau of Police for Town of Morristown*, 958 F.2d 1242, 1266 (3d Cir. 1992).

Appellants further alleges that Section B(2)(b) of the Ordinance is unconstitutionally vague. Section B(2)(b) states:

> "No person shall knowingly enter, remain on, or create any obstruction within the driveway of a healthcare facility or within a "buffer zone" on the public way or sidewalk extending from the entrance of a healthcare facility to the closest adjacent sidewalk curb and ten feet from side to side, during the facility's posted business hours, except: (b) Persons using the public sidewalk or street right-of-way adjacent to such facility solely for the purpose of reaching a destination other than such facility."

Plaintiffs allege that this section is unconstitutionally vague because they are unsure if they can walk through the buffer zone to get the sun out of their eyes. [Harpring's Motion for Preliminary Injunction, RE 37, Page ID #1566]. However, it is not the buffer zone language that is vague- the language is clear. No person shall knowingly enter the buffer zone unless the sole purpose is "reaching a destination

other than such facility." Thus, if the person is not walking to a different destination, they are prohibited, by the Ordinance, from entering the buffer zone. Further, walking around the buffer zone to get to the other side is no burden to Appellants. Hypotheticals are not enough to invalidate an ordinance for vagueness. Given a reasonable construction of the Ordinance, which is the duty of the court, the Ordinance is constitutionally definite. *Harriss*, 347 U.S. at 618. Therefore, the district court did not err when it found that the Ordinance is not unconstitutionally vague because read as a whole, it gives individuals of ordinary intelligence a reasonable opportunity to know what is prohibited. [Memorandum Order & Opinion, RE 55, Page ID # 2291].

**B. *Hill v. Colorado* has Precedential Value.**

Appellants Harping and Kenney allege that *Hill v. Colorado* has no precedential value because the law at issue involved a "eight-foot bubble zone-within a 100-foot buffer zone" which is remarkably different than the ten-foot fixed buffer zone at issue here. [Harpring's Motion for Preliminary Injunction, RE 37. Page ID # 1560]. Appellants also allege that the Ordinance more similarly resembles the 35-foot buffer zone in *McCullen* rather than the eight-foot bubble zone in *Hill*. *Id*. Page ID # 1561

The statute at issue in *Hill* made it unlawful for any person within 100 feet of a health care facility's entrance to knowingly approach another person within eight

feet of such person, unless such other person consents, for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person. 530 U.S. at 703. Appellants here allege that because the law in Hill stated, "unless such other person consents" and the Ordinance does not, the two laws are not comparable, and *Hill* has no precedential value. This argument is absurd because the Ordinance allows for sidewalk counselors and protestors to be heard from at least five feet away if not closer. If a patient wants to engage, they may engage and do not need permission from the Ordinance. The patient can walk a few feet and step out of the buffer zone.

Further, to argue that the ten-foot buffer zone resembles the 35-foot buffer zone in *McCullen* more so than the eight-foot "bubble" zone in *Hill* is also absurd. The only difference between the buffer zone and the bubble zone, is that the bubble zone moves throughout the 100-foot buffer zone and prohibits anyone from approaching within eight feet- which is more restrictive than the Ordinance.

Metro Government reiterates that the *McCullen* plaintiffs, as sidewalk counselors, had no issues with the 2000 Massachusetts's law prohibiting knowingly approaching others **within six feet**. It was only after the creation of a 35-foot buffer zone that their speech was substantially burdened. For these reasons, the district court was correct in finding that *Hill* has precedential value and was cited with approval by the *McCullen* court.

## 2. APPELLANTS CANNOT DEMONSTRATE IRREPARABLE INJURY

Appellants allege Metro's Ordinance violates their First and Fourteenth Amendment rights and other constitutional rights, both facially and as applied, by preventing Plaintiffs from walking alongside of people entering and exiting healthcare facilities. Plaintiffs also allege it violates their right to assemble, Freedom of Religion and KRS 446.350. Plaintiffs allege these violations will lead to abortions, which are legal, that they could have prevented and thus entitles them to injunctive relief.

However, Plaintiffs fail to show an actual injury or imminent injury with proper causation under the Ordinance for their allegations. Plaintiffs allege the Ordinance limits Plaintiffs ability to reach patients entering and exiting the healthcare facilities and thus their ability to prevent legal abortions. However, testimony from plaintiffs Edward Harpring and Mary Kenney clearly shows that sidewalk counselors, with the "buffer zone" in place, are still able to have conversations with patients entering and exiting the EMW Clinic. (Depo. E. Harpring, RE 45, Page ID #1898; Depo. M. Kenney, RE 46, Page ID # 1928). Even Angela Minters testified that she can easily hear escorts talking with patients within the buffer zone. (Depo. A. Minter, RE 44, Page ID # 1843].

Additionally, courts have already upheld that ordinances of this size and larger do not substantially restrict a speaker's ability to be heard, but it does protect

unwilling listeners. *Hill*, 530 U.S. at 716. Appellants have provided no evidence that the Ordinance affects willing listeners since Appellants can still be seen, heard and distribute leaflets. Further Appellants have provided zero evidence that walking alongside a patient entering a healthcare facility is productive. In fact, the legislative record suggests that patients view this as stalking and harassment.

Appellants cannot demonstrate irreparable injury. Irreparable injury is characterized as both "certain and great." *See City of Benton Harbor v. Richardson*, 429 F.Supp. 1096 1101 (W.D. Mi. 1977). This has not been demonstrated here and the district court properly denied preliminary injunction.

## 3. REMAINING ELEMENTS FOR INJUNCTIVE RELIEF CANNOT BE SATISFIED.

The third factor the court must look to when considering a motion for preliminary injunction is whether injunction may cause substantial harm to others. *American Civil Liberties Union of Michigan v. National Security Agency/Central Security Service*, 467 F.3d 590, 591 (6th Cir. 2002). "More than a possibility of success must be shown." *Id*. In arguments addressing the merits of Appellants' claims, it is clearly demonstrated that injunction opens doors for more harm to occur to patients entering and exiting healthcare facilities. Appellants have stated that they refuse to abide by the Ordinance and intend to violate it regularly- and some do.

The activities outside of the EMW Clinic already cause negative health effects to patients and present challenges to their access to health care. *See* OPEN study, RE

38, Page ID # 1599-1602; s*ee also*, Margorie Fitzgerald testimony, RE 38, Page ID # 1603. If granted injunctive relief, Plaintiffs and protestors will feel more empowered than ever to continue the harassment, assaults, stalking and intimidation of patients. This would amount to substantial harm to others.

In a similar way, an injunction would not satisfy the fourth and final element of the remedy, whether injunction would serve the public interest. *Id*. It goes without saying that stalking, harassment, assault and intimidation against vulnerable individuals does not serve the public interests. Thus, again, the district court correctly denied Plaintiffs preliminary injunction because Appellants suffered no irreparable injury.

## CONCLUSION

Metro Government is only required to not burden substantially more speech than necessary to serve its significant interests. Here, the subject Ordinance is the most effective, least restrictive means to ensure safe access to healthcare and places a very minimal burden, if any, on Appellants' ability to communicate with patients outside of healthcare facilities.

In fact, to reiterate, the plaintiffs in *McCullen*, sidewalk counselors, were only burdened by the 35-foot buffer zone and had no issues with the six-foot radius buffer zone, which is more restrictive than the buffer zone created by the Ordinance. Appellants' own testimony shows that conversations between patients and sidewalk

counselors still regularly occur. Moreover, deposition testimony from Lt. Stewart affirms that the Ordinance is the most feasible, least restrictive means to achieving the government's interest.

Finally, the district court was correct in finding that Appellants had failed to articulate any irreparable harm caused by the buffer one which is the heart of injunctions. For these reasons, the district court's denial of the Plaintiffs' motions for preliminary injunction should be upheld.

Respectfully submitted,

MICHAEL J. O'CONNELL
JEFFERSON COUNTY ATTORNEY

BY: /s/ Natalie Johnson
        Natalie Johnson
        John F. Carroll
        Assistant County Attorneys
        First Trust Centre
        200 S. 5th St. Suite 200N
        Louisville, KY  40202
        Phone: (502) 574-4307
        Natalie.johnson@louisvilleky.gov
        John.Carroll2@louisvilleky.gov
        *Counsel for Appellees*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because it contains 7621 words, which does not exceed the maximum of 13,000 words allowed, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 6 Cir. R. 32(b). I further certify that the attached brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word Times New Roman 14.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was electronically filed with the Clerk of Court for the United States Court of Appeals for the Sixth Circuit on May 9, 2022, using CM/ECF. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

/s/ Natalie Johnson
Natalie Johnson
Assistant County Attorney
200 S. Fifth St. Ste. 300N
Louisville, KY 40202
502-574-4307
Natalie.johnson@louisvilleky.gov

# ADDENDUM

## DESIGNATION OF COURT DOCUMENTS

*Sisters for Life, Inc. et al. v. Louisville-Jefferson County Metro Government, et al.*,
No. 3:21-cv-367-RGJ

| Record Entry No. | Description | Page ID # |
|---|---|---|
| 1[3] | Harpring and Kenney Verified Complaint | 1-18 |
| 28 | Sisters for Life et al., Second Amended Complaint | 1473-1497 |
| 37 | Harpring and Kenney's Motion for Preliminary Injunction | 1540-1572 |
| 38 | Defendants' Opposition to Motion for Preliminary Injunction | 1573-1613 |
| 39 | Reply ISO Motion for Preliminary Injunction | 1614-1629 |
| 44 | Deposition of Angela Minter | 1802-1872 |
| 45 | Deposition of Ed Harpring | 1873-1913 |
| 46 | Deposition of Mary Kenney | 1914-1955 |
| 47 | FRCP 30(b)(6) Deposition of Defendant, Louisville Metro Government (Lt. Caleb Stewart) | 1956-2186 |
| 49 | Sisters' for Life et al., Renewed Motion for TRO/Preliminary Injunction | 2189-2218 |

---

[3] Harpring and Kenney Verified Complaint was initially docketed in Case No. 3:21-cv-691. This case was later consolidated with Case No. 3:21-cv-367 and all remaining record entries appear in that case.

| 53 | Defendants' Opposition to Renewed Motion for TRO/Preliminary Injunction | 2228-2267 |
|---|---|---|
| 55 | Memorandum Opinion and Order Denying Preliminary Injunction | 2268-2296 |
| 56 | Sisters for Life et al., Notice of Appeal | 2297-2298 |
| 57 | Harpring and Kenney Notice of Appeal | 2299-2300 |